HENRY ARMANN v. JOSIAH H. BUEL.

FILED JUNE 5, 1894.   No. 5051.

1. **Review**: INSTRUCTIONS: ASSIGNMENTS OF ERROR.   Where instructions are grouped together by numbers in one paragraph of a petition in error and no assignment of error is made to each instruction separately, it is not specific and definite enough, and the exceptions to the instructions will not be further considered than to ascertain that any one of them was without error.

2. ———: CONFLICTING EVIDENCE.  A finding not clearly wrong will not be disturbed if the evidence is conflicting and there is sufficient testimony to support the finding.

3. **Subscription**: CONSIDERATION.   A subscription paper was signed by several persons, by which they agreed to contribute certain sums to attain an object sought to be attained by all. The promise of each of the subscribers was a good consideration for the agreement or promise to pay embodied in the subscription of the others, and the promise of each enforceable by the action of the person to whom the subscription ran or was directed, provided he had complied or fulfilled the terms or conditions upon which the subscriptions were made.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

The opinion contains a statement of the case.

*J. C. Crooker* and *Robert Ryan,* for plaintiff in error, contending that the subscription was without consideration and void, cited: *Livingston v. Rogers,* 1 Cai. Cas. [N. Y.], 583; *Walton v. Walton,* 70 Ill., 142; *Pearson v. Pearson,* 7 Johns. [N. Y.], 26*; *Grover v. Grover,* 24 Pick. [Mass.], 261; Chitty, Contracts [9th Am. ed.], pp. 53–55; 1 Parsons, Contracts, pp. 234, 475; *Klosterman v. Olcott,* 27 Neb., 685.

*W. M. Morning, contra:*

Where several persons promise to contribute to a common object desired by all, the promise of each is a good consideration for the promise of the others, and can be enforced by suit when the corporation or person to whom the subscription runs has incurred obligations on the faith of such subscriptions, and has complied with the conditions upon which they were made. (*Fremont Ferry & Bridge Co. v. Fuhrman,* 8 Neb., 103; *Security State Bank v. Raine,* 31 Neb., 517; *Hale v. Ripp,* 32 Neb., 263; *Trustees of Methodist Episcopal Church of Illinois v. Garvey,* 53 Ill., 401; *McClure v. Wilson,* 43 Ill., 356; *George v. Harris,* 4 N. H., 535; *Philomath College v. Hartless,* 6 Ore., 158; *Barnes v. Perine,* 12 N. Y., 18; *M'Auley v. Billenger,* 20 Johns. [N. Y.], *89; *Thompson v. Mercer County,* 40 Ill., 379; *McDonald v. Gray,* 11 Ia., 508; *Petty v. Trustees of Church of Christ,* 95 Ind., 278; *Galt's Executor v. Swain,* 9 Gratt. [Va.], 633; *Cumberland V. R. Co. v. Baab,* 36 Am. Dec. [Pa.], 132.)

HARRISON, J.

On the 7th day of April, 1890, the plaintiff (defendant in error here) filed in the district court of Lancaster county the following petition:

"Comes now the plaintiff and for his cause of action against said defendant says: That on or about the 22d day of November, 1887, the defendant, among others, promised and agreed in writing to pay to this plaintiff the sum of $25 for the location of thirteen acres of land for and erecting thereon a depot and switch grounds for the Missouri Pacific Railroad Company, at and near the home of said defendant in Lancaster county, Nebraska, which agreement was signed by the said defendant, the consideration thereof being the location of and erecting thereon at said depot or switch grounds near the home of defendant, and that this plaintiff should deed said ground, without price or payment thereof, to the said railroad company, which this plaintiff did, the said depot and switch grounds were located thereon, but the said defendant, although often requested, has failed and refused and neglected to pay said $25.

"Wherefore said plaintiff prays judgment against said defendant for $25, together with interest thereon at seven per cent per annum from said 22d day of November, 1887, and costs of this action."

And afterwards the defendant (plaintiff in error in this court) filed an answer as follows:

"The defendant, in answer to said plaintiff's petition, denies that on or about the 22d day of November, 1887, or at any other time, that he promised and agreed in writing to pay the plaintiff the sum of $25 for the location of thirteen acres of land for the erection thereon a depot and switch grounds for the Missouri Pacific Railroad Company at or near his home, or at any other place in Lancaster county, Nebraska.

"2. And the defendant also denies that any agreement was ever signed by him, the consideration thereof being for the location of and erection thereon a depot or switch grounds near the home of the defendant; and also denies that in consideration thereof that the plaintiff should deed said railroad company, and which the plaintiff did so deed, etc.

"3. But this defendant avers that the plaintiff did, for his own purpose and interest, convey certain lands to said railroad company for depot and switch purposes, and for his own interest and benefit, by laying out thereon a town site and plat, thereby making great profit. This defendant denies he ever, by himself or with others, promised and agreed in writing to pay the plaintiff the sum of $25 for the location of thirteen acres of land for and erecting thereon a depot and switch grounds for the Missouri Pacific Railroad Company at any place whatever.

"4. Defendant denies that the plaintiff ever made any conveyance to the Missouri Pacific Railroad Company of any land whatever, but he avers the fact to be that the plaintiff did propose to said company that if said company would locate a station on the plaintiff's farm, the plaintiff would give the said company a deed of the necessary depot grounds and for switch purposes, and that thereby the plaintiff might lay out a town site, which proposition was accepted by said company, and a station was established on the plaintiff's farm, called Sprague, by reason whereof the plaintiff has been greatly benefited and his other lands have been enhanced a hundred-fold, and this defendant is in nowise benefited or profited thereby.

"5. Further answering, the defendant denies making or signing an agreement to pay $25, or any other sum whatever payable to the plaintiff for any purpose or cause whatever, and denies each and every other material allegation not hitherto fully answered or denied."

To which defendant in error replied, denying all new matter contained in the answer. A trial of the issues to the court and a jury resulted in a verdict for the plaintiff Buel. A motion for a new trial was filed for Armann, and on hearing was by the court overruled and judgment rendered for Buel on the verdict and in accordance with its findings, to reverse which Armann brings the case here on petition in error.

The fourth paragraph of the motion for a new trial reads as follows: "The court erred in overruling the exceptions of the defendant to the first, second, third, fourth, fifth, sixth, and seventh instructions given by the court on its own motion;" and the fourth assignment of error in the petition was thus stated: "The court erred in overruling the exceptions of the defendant to the first, second, third, fourth, fifth, sixth, and seventh instructions given by the court on its own motion." By an examination of the instructions contained in the record as numbered above, we are satisfied that nearly, if not all, of them, when considered together, are free from error, and this brings this assignment of error within the rule announced by this court in *Hiatt v. Kinkaid*, 40 Neb., 178, where it was held: "An assignment of error as to the giving *en masse* of certain instructions will be considered no further than to ascertain that any one of such instructions was properly given." See, also, *McDonald v. Bowman*, 40 Neb., 269, and *Jenkins v. Mitchell*, 40 Neb., 664, in which the above doctrine was followed. The exceptions to the instructions cannot be considered. This leaves but two questions in this case for our consideration, viz., did Henry Armann sign or authorize the signing of the agreement in writing sued upon in the sum of $25; and if so, was it binding upon him?

The alleged "agreement in writing," as it was denominated in the case, was what is generally known as or called a "subscription paper." The evidence on the point of the authorization by Armann of the signing of the paper for him is conflicting upon but one point. He claims that he authorized one Mitchell to sign it for him, but limited the sum to $15, while Mitchell, on the other hand, testifies that he was told by Armann to place his name on the paper and make the amount subscribed $25, and there is some other testimony in the case which may be said to be corroborative of the evidence of Mitchell on this point, but there is ample evidence to support the finding of the jury

on this portion of the issues and it will not be disturbed. (See *Huff v. Nims,* 11 Neb., 363; *Riley v. Melquist,* 23. Neb., 475; *Omaha & R. V. R. Co. v. Brown,* 29 Neb., 493.) The agreement or subscription paper upon which this suit was instituted is as follows:

"Nov. 22, 1887.

" We, the undersigned, do bind and pledge ourselves to pay to J. H. Buel the amount opposite our names, for the purpose of securing thirteen acres of land for depot and switch grounds for the Missouri Pacific railroad on the N. E. ¼ of sec. 33 and S. E. ¼ of sec. 28, T. 8, R. 6 E. Payable when said railroad is completed at said point and depot erected."

Under this heading followed a number of names with amounts, ranging from $25 to $100, set opposite to them, among which was the name of the plaintiff in error, and opposite his name the figures $25. It is insisted by counsel for plaintiff in error that this subscription could not and did not bind Armann for the payment of the amount of his subscription, because there was no consideration for his 'promise, and no mutuality of promise. The testimony in this case shows conclusively that the defendant in error performed all the conditions of the contract on his part to be performed or promised, and that the agreement by plaintiff in error and others to pay the amounts was the inducement for him to do so. This action on his part entitled him to collect the several sums of the parties who had agreed to pay them, including Armann, plaintiff in error. In *Homan v. Steele,* 18 Neb., 652, which was an action upon a subscription paper, and in its facts and the rules of law applicable thereto a parallel case with the one at bar, it was held: " Where several promise to contribute to a common object desired by all, the promise of each is a good consideration for the promise of the others, and can be enforced by suit when the corporation or person to whom the subscription runs has incurred obligations on the faith of

such subscriptions, and has complied with the conditions on which they were made." As to this point see, also, *Fremont Ferry & Bridge Co. v. Fuhrman,* 8 Neb., 99; *George v. Harris,* 4 N. H., 535.

In the text of the opinion of *Homan v. Steele, supra,* it was stated: " In this case, however, the allegations of the petition are, and the proof shows, that in consequence of the promise of the defendant and others, the plaintiffs were induced to purchase the lot in question and erect the building thereon. They acted upon the faith of these subscriptions, and that is a sufficient consideration. In 2 Kent, Com., sec. 465, it is said : 'A valuable consideration is one that is either a benefit to the party promising or some trouble or prejudice to the party to whom the promise is made. Any damage, or suspension, or forbearance of a right will be sufficient to sustain the promise.' That is, a benefit or advantage accruing to the party who makes the promise, or some inconvenience or injury sustained by the party to whom the promise is made, is sufficient to support a contract;" and see cases cited in support of the text. In the case at bar all these elements existed, the promise by the several parties to contribute to accomplish the object desired by all, the offer of the amounts subscribed to defendant in error to induce him to part with the title to his property, and his actions thereafter in fulfillment of the terms and conditions to be performed on his part. We think the defendant in error was clearly entitled to his action upon the subscription paper against plaintiff in error, and there was no reversible error in the proceedings of the district court as presented in the record in this court. The judgment of the lower court is

AFFIRMED.

RYAN, C., having been of counsel, took no part in the decision.