FIRST NATIONAL BANK OF PLATTSMOUTH, APPELLEE, V. ESTATE OF FREDERICK D. LEHNHOFF, APPELLANT.*

FILED OCTOBER 4, 1906. No. 14,444.

Contract: CONSIDERATION. The doing of that which the creditor of a corporation is required by law to do before he could maintain an action against the stockholders of the corporation is not a sufficient consideration to support a promise.

* Rehearing allowed. See opinion, p. 307, *post*.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Reversed.*

*A. L. Tidd* and *Matthew Gering,* for appellant.

*Byron Clark, contra.*

JACKSON, C.

The Plattsmouth Brick and Terra Cotta Manufacturing Company, a corporation doing business in Cass county, was insolvent. It was indebted to the First National Bank of Plattsmouth and the Bank of Cass County. The First National Bank contemplated an action against the stockholders of the manufacturing company for the purpose of recovering the amount of indebtedness of that company to the bank. Certain of the stockholders of the manufacturing company submitted to the creditor banks the following written proposition: "Plattsmouth, Neb., May 11, 1903. We, the undersigned stockholders, do each agree with each other and the First National Bank of Plattsmouth and the Bank of Cass County of Plattsmouth, or either of them accepting in writing hereon this proposition, that if they will refrain from suing us as stockholders of the Plattsmouth Brick & Terra Cotta Manufacturing Company until the assets of said corporation are exhausted in suits by each of them to be maintained upon their respective notes against the corporation, when the deficiency is ascertained, we will prorate among ourselves, based upon our holdings of stock in said corporation, such deficiency and pay it. J. G. Richey, W. J. White, F. D. Lehnhoff, A. Baxter Smith, D. Hawksworth, Fred Goos per Henry, T. H. Pollock, H. B. Burgess." The First National Bank accepted the proposition, and proceeded in an action at law in the district court for Cass county to recover judgment against the manufacturing company, upon which execution was issued and all of the assets of the company sold. In the meantime F. D. Lehnhoff, one of the stockholders whose name

appeared on the agreement with the bank, died, and his estate was in process of administration. The First National Bank filed its claim against Lehnhoff's estate for the proportionate share due the bank under the terms of the written agreement. From an order allowing the claim an appeal was taken to the district court, where a jury trial resulted in a verdict and judgment favorable to the bank. The executrix appeals.

It appears from the evidence that Lehnhoff's subscription to the capital stock of the manufacturing company was fully paid up, and that his name on the written agreement was in fact signed by his son, George Lehnhoff. It is urged on appeal that the written agreement was without consideration and for that reason unenforceable, and that George Lehnhoff was without authority to sign the written agreement on his father's behalf. The claim of want of consideration for the written agreement arises out of an application of section 4, art. XI*b* of the constitution. The provisions of that section are: "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock." It is said that the agreement to defer action against the stockholders until the remedy against the corporation had been exhausted is a contract to observe the mandatory provisions of the constitution; that no action on behalf of the bank could be maintained in any event against the stockholders until judgment had first been obtained against the corporation and the corporate property exhausted. The constitutional provision invoked on behalf of the estate has been several times construed by this court. In *Globe Publishing Co. v. State Bank,* 41 Neb. 175, an action against the stockholders of a corporation direct for a debt due from the corporation, where it was claimed the liability of the stockholders arose by reason of a failure to

publish the annual notice provided by statute of its exist-
ing debts, it was held that the creditor had no right of
action against the stockholders until it had reduced its
claim against the corporation to judgment and until ex-
ecution issued upon such judgment had been returned
wholly or in part unsatisfied. In *Farmers Loan & Trust
Co. v. Funk*, 49 Neb. 353, an action to enforce the special
liability of a stockholder in a banking corporation under
the provisions of section 7, art. XI*b* of the constitution, it
was held that before the special liability could be enforced
against individual stockholders the assets of the corpora-
tion must first be exhausted under the provisions of sec-
tion 4 here being considered; while in *State v. German
Savings Bank*, 50 Neb. 734, it was held that before the
receiver of a banking corporation could enforce the liabil-
ity for unpaid subscription of the capital stock the in-
debtedness of the bank must first be ascertained in a
proper proceeding for that purpose.

It does not appear with any degree of certainty upon
what theory the banks originally claimed liability of the
stockholders of the manufacturing company for the debts
of the company, but the inference is that they supposed
the stockholders to be liable generally for the debts of the
insolvent corporation and that they might maintain an
action against the stockholders direct because of that
liability. It does not seem to be important, however, in
the determination of this case. Our decision, to be in
harmony with the former holdings of this court, must be
that the bank on its own behalf could not maintain an
action against the stockholders without first exhausting
its remedy against the corporation itself. The agreement
on the part of the bank to do that which by law it was re-
quired to do before it could maintain an action against
the stockholders was not a sufficient consideration to sup-
port the promise in its behalf. *Esterly Harvesting Ma-
chine Co. v. Pringle*, 41 Neb. 265.

It is urged by the appellee, however, that the contract is
enforceable independently of the consideration already

discussed, because of its being a mutual promise between the stockholders with each other for the benefit of the bank. The rule thus invoked is applicable to subscription lists where a common object is to be obtained for the benefit of all. The case of *Armann v. Buel,* 40 Neb. 803, does not support the contention of appellee. There the purpose of the subscription was to procure for a railroad corporation a tract of land for the erection thereon of a depot and switch grounds. The agreement was with the owner of the land, who conveyed the title to the railroad company, and the improvements contemplated were made. It is said in the body of the opinion: . "A valuable consideration is one that is either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made. Any damage, or suspension, or forbearance of a right, will be sufficient to sustain the promise." None of these elements are found in the contract in suit.

Again, it is urged that the contract provided for an extension of the time of payment of the debt of the company and that such extension affords a sufficient consideration, but that fact does not appear. On the contrary, the agreement clearly contemplated immediate action against the corporation.

We recommend that the judgment of the district court be reversed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.

The following opinion on rehearing was filed June 7, 1907. *Judgment of reversal adhered to:*

1. Contract: CONSIDERATION. An agreement without benefit, advantage or detriment to either party is without consideration and not enforceable.

2. Mutual promises, not for a common object or purpose and not mutually advantageous or detrimental, are without consideration and not enforceable.

AMES, C.

This case has been submitted upon reargument from a former decision pursuant to an opinion by Mr. Commissioner JACKSON, *ante*, p. 303. No new or additional propositions of law are urged, and the recital of facts contained in the former opinion is accepted by counsel as sufficiently complete and accurate, so that a restatement of them is at present uncalled for. The principal contention is that this court erred in holding that the agreement copied in a former opinion lacks a consideration requisite to render it obligatory as a contract. Counsel urges that an adequate consideration is furnished by an obligation assumed by the plaintiff to exhaust by suits the corporate assets of the brick company for the satisfaction of the claim of the former. But we do not find a promise, expressed or implied, to that effect in the agreement. The promise, although by its terms requiring acceptance by the plaintiff and, in fact, expressly accepted by it, is, notwithstanding, wholly unilateral by the subscribing stockholders. The document would not have been changed in legal effect if it had been made to read: "Although the First National Bank and the Cass County Bank, which are creditors of the Plattsmouth Brick and Terra Cotta Manufacturing Company, have and can acquire, by reason of that fact, no legal claim against us or any of us, who are stockholders of that company, yet, if said banks, or either of them, shall see fit to pursue their or its legal remedies against the company to the exhaustion of its assets, we will contribute proportionally to our holdings of stock to the payment of so much of such indebtedness as shall not be satisfied by the means aforesaid."

It is obvious that, tested by the rule announced by this court in *Armann v. Buel*, 40 Neb. 803, a promise in that form, or substantially to that effect, can have no legal

force. It is left, as it was, before the agreement was made, a matter of choice to the creditor whether it will pursue the course suggested, and a matter of indifference, as respects stockholders' liability, whether it does so or not. The creditor promises no suspension or forbearance of any legal right or remedy which it has, or is capable of acquiring, against either the corporation or its stockholders, or any of them, and as a corollary the subscribers to the agreement obtained no benefit or advantage by their promise.

The second proposition urged by counsel, and also discussed and decided in the former opinion, that the agreement is enforceable as expressing mutual promises by the subscribers to contribute toward the attainment of a common object, seems to us to be ill founded, for the reason that it is apparent, as well from the nature of the transaction as from the language of the instrument, that the object that the subscribers had in view was to make provision for the satisfaction of supposed legal obligations against them severally which, in fact, did not exist. The object was not to accomplish a mutual and common purpose, but to be discharged from supposed separate and several personal liabilities of each. If such liabilities had existed, the stockholders' obligation as such would have continued unaffected, and could have been enforced, and could have been satisfied, in exactly the same way and for precisely the same amount in the presence as in the absence of the agreement, and against such liability the agreement would have provided no indemnity, so that the essential element of mutuality is wholly lacking.

We recommend, therefore, that the former decision of this court be adhered to.

JACKSON and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former decision of this court is adhered to.

REVERSED.